UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS KAHLE BARNETT,

        Plaintiff,

v.                                   Case No. 1:13-cv-376
                                     Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for child's insurance benefits[1], disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on August 20, 1982(AR 279).[2]  He alleged a disability onset date of December 1, 2002, which was amended to June 30, 2004 (AR 33, 279).  Plaintiff completed the 12th grade and had special job training in horticulture (AR 288-89).  He had previous employment as a salesperson and animal keeper at a pet store (AR 18, 285).  Plaintiff  identified his disabling conditions as attention deficit disorder (ADD) and bi-polar (AR 284).  After an administrative hearing, the administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision

---

[1] *See* 20 C.F.R.§ 404.350(a)(5) ("You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if . . .(5) . . .  you are 18 years old or older and have a disability that began before you became 22 years old[.]")

[2] Citations to the administrative record will be referenced as (AR "page #").

denying benefits on November 4, 2011 (AR 11-24).[3]  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

---

[3] The record reflects that although plaintiff requested an administrative hearing, he "elected not to appear" at the hearing held on June 21, 2011 (AR 31).  The ALJ held a second hearing on October 13, 2011, at which time plaintiff  appeared and testified (AR 81-127).  While this case includes a claim for child's insurance benefits, plaintiff was 29 years old when he testified at the second hearing.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not attained the age of 22 as of the alleged disability onset date of June 30, 2004, that plaintiff met the insured status requirements of the Social Security Act through June 30, 2004, and that plaintiff has not engaged in substantial gainful activity since that date (AR 14). Second, the ALJ found that plaintiff had severe impairments of: social phobia / anxiety disorder; attention deficit hyperactivity disorder (ADHD); a history of cannabis abuse; a personality disorder with avoidant / dependent traits; and an affective disorder (AR 14). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.09 (substance addiction disorders), or 12.10 (autistic disorder and other pervasive developmental disorders) (AR 15-16).

The ALJ decided at the fourth step that based on all of his impairments, including the substance use disorder, plaintiff had the residual functional capacity (RFC):

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to work that is simple and unskilled with an SVP rating of 1 or 2; and involves only occasional close personal contact or interaction with co-workers, occasional contact with and direction from a supervisor, and only brief and superficial contact with the public. In addition, he is limited to routine work that does not require frequent significant changes or adaptations, and

> no requirement for meeting production quotas or goals, or keeping pace with co-workers. Due to the effects of his mental impairments, including the substance use disorder, the claimant could be expected to be non-productive / off task for at least 25% of the workday.

(AR 16). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 18).

The ALJ found at the fifth step that considering plaintiff's age, work experience and RFC, including the substance abuse disorder, there are no jobs that exist in significant numbers in the regional economy that he could perform (AR 19-20).

After making these findings, the ALJ determined that plaintiff's substance abuse was a contributing factor to his alleged disability (AR 20). In this regard, the ALJ found that:

> At least two examining psychologists, including one referred by the claimant's attorney, admonished the claimant to stop using marijuana because of its adverse effects, especially the correlation between the daily use of marijuana and lack of productive activity. Though the claimant continues to test at high levels intellectually, his ability to sustain focused attention is severely affected by his frequent use of marijuana. The claimant feels his daily use of marijuana is helpful in calming his symptoms of ADHD and anxiety. While this substance may have some desired effects in treating the claimant's symptoms, medical symptoms can also be safely and adequately controlled using medically prescribed anti-anxiety medications, especially when monitored by medical personnel. Dr. Geiger [a consultative psychologist at the Michigan Disability Determination Service] wrote that he was concerned that the claimant's daily use of marijuana was hindering his motivation to work (Exhibit 15F).

(AR 20).

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). *See Siemon v. Commissioner of Social Security*, 72 Fed. Appx. 421, 422 (6th Cir. 2003) ("the social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material for a finding of disability"). The

regulations provide that if the Commissioner finds that a claimant is disabled and has medical

evidence of drug addiction or alcoholism, the regulations require the Commissioner to "determine

whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the

determination of disability."   20 C.F.R.  §§  404.1535(a)  and  416.935(a).   In making this

determination, the regulations provide as follows:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b) and 416.935(b).

In applying 20 C.F.R. §§ 404.1535 and 416.935, the ALJ made additional findings

at the second, third, fourth and fifth steps, to consider whether plaintiff would be disabled without

the substance abuse.  At the second step, the ALJ found that if plaintiff stopped the substance use,

the remaining limitations would cause more than a minimal impact on his ability to perform basic

work activities and he would continue to have a severe impairment or combination of impairments

(AR 20).  At the third step, the ALJ found that if plaintiff stopped the substance abuse, he would not

have an impairment or combination of impairments that met or equaled the requirements of the

Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20-21).  At the fourth step, the

ALJ decided that if plaintiff stopped the substance abuse, he would have the RFC:

> . . .  to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: He would be limited to work that is simple and unskilled
> with an SVP rating of 1or 2, and work that involved only occasional close personal
> contact or interaction with co-workers, only occasional contact with and direction
> from a supervisor, and only brief and superficial contact with the public.  He would
> also be limited to work that is routine and not require frequent significant changes or
> adaptations, and no requirement for meeting production quotas or goals, or keeping
> pace with co-workers.

(AR 21).  Based on this RFC, the ALJ found that if plaintiff stopped the substance abuse, he would

be unable to perform his past relevant work (AR 23).

At the fifth step, the ALJ determined that if plaintiff stopped the substance abuse, he

could perform a significant number of jobs in the national economy at all exertional levels (AR 23).

Specifically, plaintiff could perform the following unskilled work in the relevant region, defined as

the Lower Peninsula of the State of Michigan: industrial cleaner (night) (15,000 medium jobs);

landscaper (2,500 medium jobs); kitchen helper / dishwasher (5,000 medium jobs); housekeeper /

cleaner (6,000 light jobs); router / sorter (5,000 light jobs); and hand packager (1,100 light jobs) (AR

23).

The ALJ further found that because plaintiff would not be disabled if he stopped the

substance abuse, his substance use disorder was a contributing factor material to the determination

of disability pursuant to 20 C.F.R. §§ 404.1535 and 416.935 (AR 23).  Accordingly, the ALJ

determined: (1) that based on his application for child's insurance benefits, plaintiff was not disabled

as defined in the Social Security Act prior to August 19, 2004, the date he attained age 22; (2) that

based on his application for DIB, plaintiff was not disabled as defined in the Social Security Act;

7

and (3) that based on his application for SSI, plaintiff was not disabled as defined in the Social

Security Act (AR 24).

### III. ANALYSIS

Plaintiff raised a single error on appeal:

**The administration improperly determined that a prescribed substance, taken as prescribed, can be considered drug and alcohol abuse for purposes of denying Social Security Disability Benefits.**

Plaintiff contends that the ALJ should not have applied the regulations pertaining to

drug abuse because even though he used marijuana on a regular basis since 1996, he eventually

obtained a prescription for a medical marijuana card under the Michigan Medical Marihuana Act

("MMMA"), M.C.L. § 333.26421 *et seq.* in approximately 2011.  In this regard, plaintiff relies on

SSR 13-2p ("Evaluating cases involving drug addiction and alcoholism (DAA)," which states that

for purposes of evaluating drug addiction, DAA does not include "[a]ddiction to, or use of,

prescription medications taken as prescribed, including methadone and narcotic pain medications."

SSR 13-2p (question (1)(b)).[4]   Plaintiff contends that SSR 13-2p prevented the ALJ from

considering his marijuana use as substance abuse under the regulations because he was issued a

medical marijuana card (AR 103).

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*,  167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

As an initial matter, defendant points out that SSR 13-2p was not relevant in this case. SSR 13-2p became effective on March 22, 2013, more than one year after the ALJ's decision denying benefits and more than one month after the Appeals Council denied review (AR 1-3, 11-24). Accordingly, plaintiff's claim should fail on this basis.[5]

Even if SSR 13-2p had been in effect, it would be inapplicable to plaintiff's claim. While Michigan has authorized the use of medical marijuana pursuant to the MMMA, marijuana was, and continues to be, an illegal substance under federal law. "The federal government has not recognized a legitimate medical use for marijuana  .  .  . and there is no exception for medical marijuana distribution or possession under the federal Controlled Substances Act, 21 U.S.C. §§ 801–971." *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 945 (9th Cir. 2010).  In *Shipley v. Astrue*,  No. CV-10-3003-CI, 2011 WL 3440032 (E.D. Wash. Aug. 8, 2011), the court discussed the interplay between state authorized medical marijuana and federal law denying disability benefits where drug addiction is a contributing factor material to the person's alleged disability:

> While individual states have the authority to regulate medical care within their borders, *Oregon v. Ashcroft*, 368 F.3d 1118, 1124 (9th Cir. 2004), there is no support for an argument that a SSI applicant who resides in a state that allows the use of medical marijuana is exempt from the Contract with America Advancement Act, the Social Security Act, and implementing federal regulations that deny disability benefits where drug addiction is a contributing factor material to the person's disability.  42 U.S.C. 423(d)(2)(C); 20 C.F.R. § 416.935.  Regardless of state law authorizing the use of medical marijuana, Plaintiff must prove drug use is not a contributing factor to her disability.

*Shipley v. Astrue*,  No. CV-10-3003-CI, 2011 WL 3440032 at *8, fn. 6 (E.D. Wash. Aug. 8, 2011).

The Court agrees with the approach in *Shipley*, which is consistent with the general

---

[5] Plaintiff does not suggest that an SSR operates retroactively.

principles of federal preemption.  "It is a seminal principle of our law 'that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them.'"  *Hancock v. Train*, 426 U.S. 167, 178 (1976), quoting *McCulloch v. Maryland*, 17 U.S. 316, 426 (1819).  *See United States v. Michigan Department of Community Health*, No. 1:10-mc-109, 2011 WL 2412602 at *12 (W.D. Mich. June 9, 2011) ("[a]s a state law authorizing the use of medical marijuana, the MMMA cannot negate, nullify or supersede the federal Controlled Substances Act, which criminalized the possession and distribution of marijuana throughout the entire country long before Michigan passed its law"); *United States v. Hicks*, 722 F.Supp.2d 829, 833 (E.D. Mich. 2010) ("[i]t is indisputable that state medical-marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana").

Furthermore, plaintiff cannot rely on the MMMA where his drug use predates both the enactment of that statute and his acquisition of a medical marijuana card.  Plaintiff reported that he has used marijuana since 1996 (i.e., since he was 14 years old) (AR 447), approximately 12 years before the MMMA became effective on December 4, 2008.  *See* M.C.L. § 333.26421.  Thus, plaintiff's use of marijuana was illegal under both federal and state law for approximately 12 years, a time period which included his alleged disability onset date of June 30, 2004.  In addition, it appears from the record that plaintiff did not obtain a medical marijuana card until quite recently. It is unclear exactly when plaintiff obtained his medical marijuana card.  A psychological evaluation performed on June 22, 2011 (the day after plaintiff failed to appear for his administrative hearing), stated that plaintiff "is an active and daily user of marijuana and has a medical marijuana certification" (AR 443).  Then, in July 2011, plaintiff reported that he smokes marijuana every day

and that he was "legal now," having "brought in a thing from my chiropractor that said I had back

pain and another doctor signed my [medical marijuana] card" (AR 447).  This evidence contradicts

plaintiff's claim had been using marijuana as prescribed prior to June 2011.  *See Bush v. Astrue*, No.

12-11790, 2013 WL 1747807 at *14 (Report and Recommendation) (E.D. Mich. Jan. 25, 2013),

*adopted in* 2013 WL 1747828  (Order) (April 23, 2013) (evidence that a claimant used marijuana

before receiving a medical marijuana card was relevant in establishing that the claimant was not

using marijuana as prescribed).  Accordingly, plaintiff's claim of error should be denied.[6]

### IV.      Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's

decision be **AFFIRMED**.


Dated:  September 2, 2014                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge

---

[6] Plaintiff's included a brief argument suggesting that the ALJ improperly found that his functioning would have improved absent the substance abuse disorder.  Plaintiff did not identify this issue as a "specific error[] of fact or law upon which Plaintiff seeks reversal or remand" as directed by the Court.  *See* Notice (docket no. 8). In addition, plaintiff did not develop this rather complex issue, which involves the  ALJ's application of a federal regulatory scheme in a meaningful manner.  Other than reproducing one relevant regulation, plaintiff presented only a cryptic argument and no legal authority to support his claim.  A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.  *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems this argument waived.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).